IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

PETRICA CHEATHAM                      §
                                      §
VS.                                   §   CIVIL ACTION NO. 4:11-CV-638-Y
                                      §
FARMERS INSURANCE GROUP               §

<u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is the Motion for Summary Judgment (doc. 53) filed by defendant Farmers Insurance Exchange ("Farmers").  After review, the Court will grant the motion.


I.   Background

*Pro-se* plaintiff Petrica Cheatham is a former employee of Farmers.  According to Cheatham, she developed narcolepsy during her employment with Farmers and, as a result, she began to experience decreased productivity throughout the years 2008, 2009, and 2010.  Cheatham also alleges that her narcolepsy forced her to take significant amounts of leave under the Family and Medical Leave Act ("FMLA") during those years.

In September 2009, Cheatham received a "formal warning" memo addressing various deficiencies in her work performance and issuing certain guidelines for her to adhere to in seeking to improve her performance.[1]  (Def.'s App. 77.)  Cheatham had received an overall rating of "below expectations" for 2009 because she had not met any

---

[1]      Those guidelines included (1) making initial customer contacts within twenty-four hours, (2) re-contacting customers timely when required, (3) setting reserves in a timely manner, and (4) reducing her inventory of activities. (Def.'s App. 77.)

of her performance goals for that year. (*Id.* at 83.)   In February 2010, Cheatham received a "performance" memo from her supervisor noting that she would be expected to meet her goals in 2010, which included (1) 98% payment compliance, (2) 93% file quality, and (3) a score of 91% on customer-service surveys. (*Id.* at 72.)

On May 21, 2010, Cheatham was placed on probation and given a corresponding memo explaining that she was substantially behind on her goals for 2010. (*Id.* at 84.)   Her customer-service survey score, for example, was 6.25%, well short of her target score of 91%. (*Id.*)   The probation memo instructed her to become "day-current" on her activities list and to continue improving her goals for file quality and payment compliance. (*Id.*)   Although Farmers' typical probation period is thirty days, Cheatham was granted sixty days to reach her objectives and become current on her activities. (*Id.* at 84-85, 87.)

Due to a leave of absence that Cheatham took shortly thereafter, Farmers did not revisit Cheatham's performance at the expiration of the original sixty-day period. (*Id.* at 89.) Instead, upon her return to work in October 2010, Farmers sent Cheatham a second probation memo granting her an additional thirty days to improve her performance. (*Id.* at 89.)   In any event, on November 17, 2010, after Cheatham failed to meet her required goals and comply with her prescribed guidelines, Farmers terminated Cheatham's employment on the ground of poor performance. (*Id.* at

2

87, 95.)

Following her termination, Cheatham filed the instant lawsuit against Farmers (doc. 2).  Cheatham's first amended complaint asserted claims against Farmers for (1) disability discrimination under the Americans with Disabilities Act ("ADA") and the Texas Labor Code; (2) retaliation under the ADA and the Texas Labor Code; (3) intentional infliction of emotional distress; (4) common-law wrongful termination; (5) hostile work environment; and (6) retaliation under the FMLA.

Upon motion by Farmers under Federal Rule of Civil Procedure 12(b)(6), the Court entered an order (doc. 59) dismissing Cheatham's claims for (1) failure to accommodate under the ADA and Texas Commission on Human Rights Act ("TCHRA"), (2) retaliation under the ADA and TCHRA, (3) intentional infliction of emotional distress, (4) common-law wrongful termination, and (5) hostile work environment.  The Court also concluded that all of Cheatham's claims based on conduct occurring outside of the period between October 19 and November 17, 2010, were barred either as untimely or as falling outside the scope of her administrative charge.

Remaining in the case are Cheatham's claims for (1) ADA and TCHRA disability discrimination based on her termination and (2) FMLA retaliation.  Farmers now moves for summary judgment on these claims.  Cheatham did not file a response.

3

II.  Legal Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Instead, parties should "identify

4

specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

"When a party does not file an opposition to a motion for summary judgment, the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if they show that the movant is entitled to judgment in his favor." *Jegart v. Roman Catholic Church of Diocese of Houma-Thibodaux*, 384 F. App'x 398, 400 (5th Cir. 2010); *see also Probado Tech. Corp. v. SMARTnet, Inc.*, No. C-09-349, 2010 WL 4638902, at *3 (S.D. Tex. Nov. 8, 2010) ("If the non-movant fails to respond to the motion for summary judgment, the facts attested by movant's affidavits must be deemed true and established." (citation omitted) (internal quotation marks omitted)). "Failure to respond to the summary judgment motion effectively waives the non-movant's opportunity to offer evidence or legal argument in opposition to summary judgment." *Probado*, 2010 WL 4638902, at *3 (quoting *Ervin v. Sprint Commc'ns Co.*, 364 F. App'x 114, 116 (5th Cir. 2010)).

But the Court "may not grant a motion for summary judgment merely because it is unopposed." *Id.; see also Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose

violated a local rule." (citation omitted)). "The movant still has the initial burden of establishing the absence of a genuine [dispute] of material fact." *Probado*, 2010 WL 4638902, at *3 (citing *Hibernia*, 776 F.2d at 1279). The Court must grant summary judgment only "if no reasonable juror could find for the non-movant." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. Analysis

### A.   ADA and TCHRA Disability-Discrimination Claims

When a plaintiff lacks direct evidence to support her disability-discrimination claim, the Court applies the Fifth Circuit's "modified *McDonnell Douglas*" approach in conducting its summary-judgment analysis. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009); *Mesa v. Verizon Business Network Servs., Inc.*, No. 3:10-CV-2324-D, 2012 WL 3452696, at * 2 (N.D. Tex. Aug. 14, 2012) (Fitzwater, C.J.) (slip opinion).[2] Under the

---

[2]     In *Pinkerton v. Spellings*, 529 F.3d 513 (5th Cir. 2008), the Fifth Circuit held that "[t]he proper causation standard under the ADA is a 'motivating factor' test" but "express[ed] no opinion on who bears the burden of proof at trial, including whether the 'modified *McDonnell-Douglas* scheme' . . . applies in ADA actions." *Pinkerton*, 529 F.3d at 519 & n.35. Since *Pinkerton*, however, the Fifth Circuit has applied the *McDonnell Douglas* framework in a number of ADA cases. *See, e.g., Hammond v. Jacob Field Servs.*, No. 12-30222, 2012 WL 6033078, at *2-3 (5th Cir. 2012) (unpublished); *Chevron*, 570 F.3d at 615. In the Court's view, the Fifth Circuit's application of *McDonnell Douglas* in post-*Pinkerton* ADA cases suggests that the modified *McDonnell Douglas* approach should be utilized in appropriate ADA cases (i.e., cases where the plaintiff is not proceeding entirely on a "sole motivating factor" theory). This seems especially fitting given the Fifth Circuit's prior observation that *Rachid v. Jack in the Box, Inc.*,

first step of this framework, the plaintiff must establish a *prima-facie* case of disability discrimination. *See Chevron*, 570 F.3d at 615.   To do this, the plaintiff must present evidence showing that (1) she has a disability, she has a record of having a disability, or she is regarded as disabled; (2) she is qualified for her job; (3) she was subjected to an adverse employment action on account of her disability or the perception of her disability; and (4) she was replaced by, or at least treated less favorably than, non-disabled employees. *See id.*

At the second step, the employer must articulate a legitimate non-discriminatory reason for its adverse employment action and support it with evidence. *See id.*   If the employer manages to do this, then at step three "the *McDonnell Douglas* burden-shifting framework falls away and the issue becomes discrimination *vel non.*" *See id.*   The plaintiff, at this point, "may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative." *See Mesa*, 2012 WL 3452696, at *3 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).   The pretext alternative involves "offer[ing] sufficient evidence to create a genuine [dispute] of material fact that [the] defendant's reason is not true, but is

---

376 F.3d 305 (5th Cir. 2004), the case that birthed the modified *McDonnell Douglas* approach, "is the law of this circuit." *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 334 (5th Cir. 2005).   Notably, this Court has previously applied the modified *McDonnell Douglas* framework in ADA cases. *See Mesa*, 2012 WL 3452696, at *2.

instead a pretext for discrimination." *Id.* (quoting *Rachid*, 376 F.3d at 312) (internal quotation marks omitted). By contrast, "[u]nder the mixed-motives alternative, [the plaintiff] must offer sufficient evidence to create a genuine [dispute] of material fact 'that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is [the plaintiff's] protected characteristic.'" *Id.* (quoting *Rachid*, 376 F.3d at 312).[3]

Here, Cheatham has failed to establish a *prima-facie* case of disability discrimination. Specifically, Cheatham has produced no evidence that "she was replaced by, or at least treated less favorably than, non-disabled employees." *Chevron*, 570 F.3d at 615. Moreover, even assuming that she has established a *prima-facie* case of disability-discrimination, Farmers has articulated a legitimate non-discriminatory reason for its decision, and Cheatham has produced no evidence to undermine this proffered reason--under either the pretext or the mixed-motive alternative. *See Mesa*, 2012 WL 3452696, at *3.

According to Farmers, it terminated Cheatham's employment because of poor performance--not because of her narcolepsy or other disability. In support, Farmers has presented evidence that

---

[3]     "Because the ADA and TCHRA are very similar, Texas courts and [the Fifth Circuit] focus on federal precedent regarding the ADA in interpreting the TCHRA." *Willi v. Am. Airlines, Inc.*, 288 F. App'x 126, 127 n.2 (5th Cir. 2008) (citing *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006)).

Cheatham failed to meet any of her performance objectives for 2009 and that she received an overall rating of "below expectations" for that year. (Def.'s App. 83.) Farmers has also produced evidence that Cheatham likewise failed to meet her performance goals in 2010 and thereafter did not meet the terms of her probation. (*Id.* at 72, 84-85.) The undisputed record indicates, moreover, that Farmers issued Cheatham various performance-related memos to apprise her of her progress throughout probation process. (*Id.* at 72, 83-84.)

Because Cheatham has failed to come forward with evidence suggesting that Farmers' proffered reason for firing her was merely pretext for discrimination or that her disability was at least a motivating factor behind her termination, there is no dispute of material fact precluding summary judgment on her ADA and TCHRA claims. *See Mesa*, 2012 WL 3452696. Therefore, those claims fail as a matter of law.

B.   FMLA Retaliation Claim

The analysis of Cheatham's FMLA retaliation claim is virtually the same. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (noting that the "*McDonnell-Douglas* burden shifting framework [is typically used] to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities" and that "the mixed-motive framework [is used] in appropriate FMLA retaliation cases"). Cheatham must first

establish a *prima-facie* case of retaliation by showing that "(1) [s]he was protected under the FMLA; (2) [s]he suffered an adverse employment action; and (3) [s]he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because [s]he sought protection under the FMLA." *Mauder v. Metro. Transit Authority of Harris Cnty.*, 446 F.3d 574, 583 (5th Cir. 2006) (citing *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001)).  Cheatham has produced no evidence in support of element three.  *Id.*

Moreover, even if Cheatham had made out a *prima-facie* case, her FMLA retaliation claim would nevertheless as a matter of law because she has not produced any evidence to undermine Farmers' proffered legitimate nondiscriminatory reason.  As noted above, Farmers has presented evidence that it terminated her employment on the ground of poor performance.  This returned the burden to Cheatham to show that Farmers' proffered reason was either pretext for discrimination or was accompanied by other motives, at least one of which was disability discrimination.  *See id.; Richardson*, 434 F.3d at 334.[4]

---

[4]     The *Richardson* court stated in passing that "[t]he mixed-motive framework applies to cases in which the employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination." *Richardson*, 434 F.3d at 333.  But in *Smith v. Xerox Corporation*, 602 F.3d 320 (5th Cir. 2010), the Fifth Circuit clarified that "[t]his statement articulated the mixed-motive framework generally and was not meant to enumerate the required elements of a mixed-motive case." *Smith*, 602 F.3d at 332.  "[T]he mixed-motive framework," explained the Fifth Circuit, "does not require the plaintiff to concede that the employer's stated reason was legitimate." *Id.* at 333.
The Fifth Circuit further explained that "a case need not be correctly

IV.   Conclusion

Based on the foregoing, the Court concludes that Cheatham has failed to create a dispute of material fact concerning her ADA and TCHRA disability-discrimination claims and her FMLA retaliation claim.   Accordingly, Farmers' motion for summary judgment is GRANTED, and the aforementioned claims are DISMISSED WITH PREJUDICE.

SIGNED March 13, 2013.

_Terry R. Means_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning
. . . because the distinction often will not be known to the plaintiff prior to
discovery." *Id.* (citation omitted) (internal quotation marks omitted).   Instead,
"if the district court has before it substantial evidence supporting a conclusion
that both a legitimate and an illegitimate (i.e., more than one) motive may have
played a role in the challenged employment action, the court may give a
mixed-motive instruction" (or, at the Rule 56 stage, allow the plaintiff's claim
to survive summary judgment on a mixed-motive theory).   *Id.*

TRM/dc                                    11